# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SHAHBAZ SADIQ, et al.,

        *Plaintiffs,*

vs.

        Case No. 07-1276-EFM

SPIRIT AEROSYSTEMS, INC.,

        *Defendant.*

## MEMORANDUM AND ORDER

Plaintiffs, Shahbaz Sadiq, Robert Duren, and Paul Schimmelpfenig, current and former employees of Defendant, Spirit AeroSystems, Inc. ("Spirit"),[1] assert four claims against Defendant: (1) breach of contract under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; (2) breach of contract under Kansas state law; (3) promissory estoppel under Kansas state law; and (4) negligent misrepresentation under Kansas state law. Plaintiffs' claims arise out of Defendant's decision to demote them and reduce their pay in order to settle a grievance filed against Spirit by District Lodge 70 and Aero Lodge 839, International Association of Machinists and Aerospace Workers ("the Union"). Defendant has moved for summary judgment on all of Plaintiffs' claims (Doc. 66). For the following reasons, the Court grants Defendant's motion.

---

[1]Plaintiffs Sadiq and Duren are currently employed by Defendant, while Plaintiff Schimmelpfenig is not.

## I. Background Facts[2]

In 2005, Defendant purchased The Boeing Company's commercial operations in Wichita, Kansas.[3] At the time of the purchase, Defendant also hired several thousand employees from the then-existing Boeing workforce. These employees started working for Defendant on June 17, 2005, the day that Defendant began operations, and are commonly referred to as Day 1 employees. In accordance with the Collective Bargaining Agreement ("CBA") between Defendant and the Union,[4] effective June 25, 2005, Day 1 employees who were represented by the Union were credited with seniority for the years they had worked at Boeing.

As Defendant began ramping up its operations in the summer of 2005, it started hiring additional employees in a number of divisions. In the tooling division, managers identified numerous potential job candidates, including Plaintiffs, off a list of employees who were on layoff status from Boeing and who still had Category A rights to Boeing jobs. This list was known as the "Cat A" list. Category A rights were seniority rights that laid-off Boeing workers had to certain positions at Boeing (not Spirit) if Boeing decided to re-hire into those positions. Defendant was under no obligation to hire any of the employees on the Cat A list, and believed it

---

[2]In accordance with summary judgment procedures, the facts are related in the light most favorable to the non-moving party. The Court notes that D. Kan. Rule 56.1 requires the parties to provide a concise statement of material facts. These facts are to refer with particularity to those portions of the record upon which they rely. The party disputing an asserted fact must provide an appropriate cite to the record that supports its contention. In the present case, there were numerous occasions where Plaintiffs controverted facts asserted by Defendant but either cited deposition testimony out of context, cited deposition testimony that was not germane, or provided no citation at all. Because these facts were not properly controverted, the Court deems them admitted for purposes of summary judgment. *See, e.g., Wagoner v. Pfizer, Inc.*, 2009 WL 304340, at *1 n.1 (D. Kan. Feb. 9, 2009).

[3]This event is also referred to as the divestiture.

[4]The CBA entered into between the Union and Defendant is separate from any CBA that may have existed between The Boeing Company and the Union.

could hire individuals from this list without concern for the seniority or promotional rights of Day 1 employees.

In late summer/early fall 2005, each Plaintiff received a conditional offer letter from Defendant: Plaintiffs Duren and Schimmelpfenig were offered positions as Level A Tooling Technicians (also referred to as the M12A job code),[5] the highest level for Tooling Technicians,[6] and Plaintiff Sadiq was offered employment as a Level C Tooling Technician.[7]  It also listed the rate of pay each Plaintiff was to receive: Plaintiff Schimmelpfenig's rate was $28.38 per hour, while Plaintiff Sadiq's and Plaintiff Duren's rate was $29.17.  The offer letter, however, did not state that the job level or wage rate offered was guaranteed for any period of time nor did it set forth a specific period of employment.

In addition to the offer letter, Plaintiffs also received an Employment Application.  This form contained a Certification Statement that had the following language just above the signature line:

> Except as otherwise may be provided by the terms of the collective bargaining agreement applicable to me, I understand and agree that if I become employed by MWAS [Defendant's prior name] my employment will be for an indefinite length of time and will be entirely at will; that is, the relationship may be terminated by either MWAS or me at any time, with or without prior notice.
>
> I further understand and agree that this statement constitutes the sole and entire agreement between MWAS and me concerning the length or nature of my employment with MWAS, and it supersedes all prior representations and agreements, if any, concerning this matter and cannot be changed or amended in any respect except in a subsequent writing executed by the President of MWAS.

---

[5]This job is within the collective bargaining unit represented by the Union and is governed by the CBA.

[6]There are three levels for Tooling Technicians at Spirit: A, B, and C.

[7]Although Plaintiff Sadiq was initially offered employment as a Level C Technician, he was hired as a Level A Technician.

No other documents were provided to Plaintiffs by Defendant during the hiring process. Furthermore, no one with Defendant made any representations to Plaintiffs that they would be employed as 12A technicians for any fixed period of time or that they would be receiving their incoming wage rate for any fixed period of time into the future. Each Plaintiff accepted Defendant's employment offer.

Soon after Plaintiffs Duren and Schimmelpfenig began work, and shortly before Plaintiff Sadiq was hired, Day 1 employees started filing grievances through the Union, alleging that they had hard rights to positions that were offered to individuals hired after the divestiture, including the M12A job code.[8] After a number of individual grievances were filed, the Union, pursuant to § 7.4 of the CBA,[9] filed a Union vs. Company grievance, commonly referred to as the Hard Rights grievance, in August 2006 on behalf of over 100 Day 1 employees. In its grievance, the Union claimed that Defendant breached § 16.2 of the CBA when it hired employees after the divestiture into positions Day 1 employees claimed hard rights to.[10]

---

[8]Defendant did not actually receive any of these grievances until after it had made its employment offers to Plaintiffs.

[9]Section 7.4 states, in relevant part:

In the case of any grievance which the Union may have against the Company or the Company may have against the Union, the processing of such grievance shall begin with Step 3 and shall be limited to matters dealing with the interpretation or application of terms of this Agreement. Such grievance shall be submitted in writing to the designated representative of the Company or the designated representative of the Union . . . .

[10]Section 16.2 provides:

The Company shall promote within job classification by seniority provided the employee has met the criteria as described in the job description or can demonstrate the ability to perform the job. Employees will be considered for promotion in the following order:
   1. Employees who have previously held the job
   2. Employees in the next lower job level within the classification[.]

Because § 16.2 did not specifically address the issue raised in the Hard Rights grievance, it was not clear whether Defendant had violated the CBA. Nevertheless, in late December 2006, after months of negotiations, Defendant and the Union settled the Hard Rights grievance. This settlement cost Defendant nearly $500,000 and accomplished primarily two things. First, it established, for the first time, that certain categories of Day 1 employees had hard rights to certain job codes. Second, in light of this establishment, it led to many Day 1 employees being offered a promotion and/or back-pay. Not all Day 1 employees received promotion offers into job codes that they had claimed rights to. For instance, several Day 1 employees claimed hard rights to the M12A job code, but were only offered promotions to the M12C position, which they accepted. According to Defendant, these workers were not offered promotions to Level A because its business needs did not support such a promotion.

The promotion of Day 1 employees to the M12C job code, however, did not completely solve the issue raised by the Union vs. Company grievance, as these employees had more seniority than those currently working as 12A technicians. Therefore, to restore the seniority order in the tooling division, and thus allow the Hard Rights grievance to be settled, Plaintiffs and another employee who was also working as a 12A technician were demoted to the M12C job code.[11] This demotion resulted in a reduction of each Plaintiff's hourly wage by over three dollars an hour.

---

[11]Numerous times in their response, Plaintiffs argued that their demotion was the result of individual settlements that Defendant reached with Day 1 employees who allegedly had hard rights to the Level A position, not the settlement of the Hard Rights agreement. In support of this argument, Plaintiffs cite to pages 93-96 of Tommy Mount's deposition testimony. While, at first blush, it appears that the cited testimony supports the proposition that Defendant struck individual settlement agreements with effected Day 1 employees, it is clear, when this testimony is read in its entirety, that the offers discussed on pages 93-96 were actually part of the Hard Rights agreement. As a consequence, we find that Plaintiffs have not controverted Defendant's assertion that Plaintiffs were demoted as part of the settlement of the Hard Rights grievance.

Following their demotion, on February 13, 2007, Plaintiffs filed union complaints, claiming that Defendant had breached the CBA. Exactly one month later, Defendant and the Union agreed to close Plaintiffs' complaints and not to pursue any further steps in the grievance process. On September 12, 2007, Plaintiffs filed suit against Defendant, alleging: (1) breach of contract under § 301 of the LMRA; (2) breach of contract under Kansas state law; (3) promissory estoppel under Kansas state law; and (4) and negligent misrepresentation under Kansas state law.[12] Defendant has moved for summary judgment on all of Plaintiffs' claims.

### III. Standard of Review

The Court is familiar with the standards governing the consideration of summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[14] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim"[15] In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[16]

---

[12]Plaintiffs also brought a breach of duty of fair representation claim against the Union. However, as stated in Plaintiffs' response (Doc. 78), Plaintiffs and the Union have reached a settlement on this claim.

[13]Fed. R. Civ. P. 56(c).

[14]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[15]*Id.*

[16]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[17]  The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[18]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[19]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings,     but must present significant admissible probative evidence supporting its allegations.[20]  The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[21]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[22]

## IV.  Analysis

As noted above, Plaintiffs assert four claims against Defendant: (1) breach of contract under § 301 of the LMRA; (2) breach of contract; (3       ) promissory estoppel; and (4) negligent misrepresentation.  Defendant has moved for summary judgment on all of Plaintiffs' claims.

---

[17]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[19]*Celotex*, 477 U.S. at 323.

[20]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[21]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[22]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

*Section 301 Claim*

There are two types of Section 301 actions: hybrid and straightforward.[23] Hybrid actions typically are brought by a union member and "allege a violation of the collective bargaining agreement by the employer and a breach of the duty of fair representation by the union."[24] Straightforward actions, on the other hand, are actions typically brought by the union and claim that the employer breached the collective bargaining agreement.[25] Plaintiffs' § 301 claim is a hybrid. In order for Plaintiffs to prevail, they must prove both that Spirit violated the CBA and that the Union breached its duty of fair representation.[26]

Defendant contends that it is entitled to summary judgment on Plaintiffs' § 301 claim because Plaintiffs cannot show either that Defendant violated the CBA or that the Union breached its duty of fair representation. Because the Court agrees with Defendant that Plaintiffs cannot show that the CBA was violated, the Court grants Defendant's request for summary judgment on this claim.[27]

---

[23]*See Cox v. Essex Group, Inc.*, 838 F. Supp. 1443, 1446 (D. Kan. 1993).

[24]*Nelson v. Holmes Freight Lines, Inc.*, 37 F.3d 591, 594 (10th Cir. 1994).

[25]*United Paperworkers Int'l, Local No. 395 v. ITT Rayonier, Inc.*, 931 F.2d 832, 834 n.7 (11th Cir. 1991).

[26]*See Hinkley v. Roadway Exp., Inc.*, 249 Fed. App'x 13, 16 (10th Cir. 2007). The fact that Plaintiffs have already settled with the Union is immaterial. In a hybrid § 301 suit, an "employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello v. Teamsters,* 462 U.S. 151, 165 (1983).

[27]In its briefing, Defendant correctly points out that proof that the union breached it duty of fair representation is a necessary prerequisite to a successful suit against the employer for a violation of the CBA. However, in cases where the Court finds that the CBA has not been violated, the Court does not need to first determine whether the union breached its duty before granting summary judgment on the plaintiff's claim. *See, e.g., Bliesner v. Comm. Workers of Am.*, 464 F.3d 910, 914 (9th Cir. 2006); *Laurin v. Providence Hosp.*, 150 F.3d 52, 61-62 (1st Cir. 1998); *Dougherty v. Parsec, Inc.*, 1994 WL 20090, at *3 (6th Cir. Jan. 21, 1994); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992).

## A. Whether the CBA was Violated

Based on the pretrial report, it appears that Plaintiffs contend that Defendant violated the CBA in the following four ways: (1) by hiring them; (2) by settling the Hard Rights grievance in the manner it did; (3) by demoting them; and (4) by entering into an agreement with the Union to close Plaintiffs' grievances. The Court will review each of these alleged violations in turn.

### 1. The Hiring of Plaintiffs

Plaintiffs allege that their hiring violated § 16.2 of the CBA. In support of this allegation, Plaintiffs cite to Tommy Mount's[28] deposition testimony that he was of the impression, once it was established that certain Day 1 employees had hard rights, that the hiring of people that did not have the seniority that employees with hard rights had constituted a violation. In its briefing, Defendant contends that, regardless of whether § 16.2 was violated, Plaintiffs' hiring cannot serve as the basis of their § 301 claim because, at the time the alleged violation occurred, Plaintiffs were not under the CBA. Plaintiffs do not respond to Defendant's contention.

After reviewing the relevant case law, the Court agrees with Defendant. In order for a party "[t]o have standing to bring an action for breach of a collective bargaining agreement, [they] must be either a member of the collective bargaining unit covered by the agreement or a third party beneficiary of that agreement" at the time the alleged violation occurred[29] Here, because Plaintiffs were not employees at the time of their hiring, they obviously were not members of the collective

---

[28]Tommy Mount is one of Defendant's labor relations representatives.

[29]*Anderson v. Boeing Co.*, 222 F.R.D. 521, 553 (N.D. Okla. 2004) (quoting *Sepulveda v. Pac. Maritime Ass'n*, 878 F.2d 1137, 1139 (9th Cir. 1989)); *see also Souter v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local 72*, 993 F.2d 595, 597 n.1 (7th Cir. 1993) (concluding that employee's wife did not have standing to claim that her husband's employer had violated the CBA because she was neither a member of the bargaining group nor a third-party beneficiary of the CBA).

bargaining unit. As a result, the only way that Plaintiffs have standing to assert that their hiring was a violation of the CBA is if they were a third party beneficiary of that agreement.

To determine whether Plaintiffs were third party beneficiaries of the CBA, the Court must apply Kansas law to the extent it is compatible with federal labor policy.[30] Under Kansas law, a person is a third party beneficiary to a contract if "the contract [was] made for his benefit, as its object, and he [is] the party intended to be benefited."[31] Based on § 16.2's plain language, it appears that § 16.2 is intended to benefit only existing employees. Nothing in the record suggests a contrary intent. Therefore, because Plaintiffs were not members of the bargaining unit and were not third-party beneficiaries, the Court finds that Plaintiffs' hiring cannot serve as the basis of their § 301 claim.

### 2. Settlement of the Hard Rights Grievance

Plaintiffs also claim that the manner in which the Hard Rights grievance was settled violated §§ 7.4 and 16.2 of the CBA. In its memorandum in support of its motion, Defendant contends that the settlement agreement could not have violated either § 7.2 or § 16.2 because it clarified the interpretation, scope, and application of § 16.2.

Section 7.4 of the CBA sets forth the procedure for processing a Union vs. Company grievance. Specifically, § 7.4 states that Union vs. Company grievances shall be limited to matters dealing with the interpretation or application of terms of the CBA and that the grievance process will begin at step three. In their response, Plaintiffs assert that there is a jury question as to whether the parties followed § 7.4 when they reached a settlement that did not clarify the interpretation or scope

---

[30]*Sepulveda*, 878 F.2d at 1139.

[31]*Burton v. Larkin*, 36 Kan. 246, 13 P. 398, 399 (1887) (internal quotation marks omitted).

-10-

of § 16.2. In support of this assertion, Plaintiffs cite to the following statements made by Tommy Mount: (1) the settlement agreement, not the CBA, established Day 1 employees' hard rights and (2) Defendant's authority to demote Plaintiffs was derived from its role as Plaintiffs' employer, not the CBA.

Based on the argument made in their response, it is clear that Plaintiffs have missed the forest for the trees. The fact that discrete parts of the agreement, which contribute to the settlement of the grievance, are not specifically based on the CBA is irrelevant under § 7.4. All that § 7.4 requires is that the grievance be based on a provision in the CBA and that the resolution of the grievance actually clarify the interpretation or application of that provision. Here, the Union filed the Hard Rights grievance because it believed that Defendant breached § 16.2 of the CBA when it hired employees after the divestiture into positions Day 1 employees claimed hard rights to. Defendant has submitted an affidavit prepared by Jeff Clark, Director of HR Service Center and Vendor Management, stating that the agreement clarified the interpretation and application of § 16.2. Plaintiffs have offered no evidence to rebut either of these facts. As a result, the Court finds that Plaintiffs' allegation that the settlement agreement violated § 7.4 cannot serve as the basis of their § 301 claim.

In addition to § 7.4, Plaintiffs also contend that the settlement agreement violated § 16.2. In their response, Plaintiffs fail to elaborate on this contention. As a consequence, the Court is left to its own devices to determine how exactly this provision was violated. After carefully reading § 16.2, the Court has come up with only one way that the settlement agreement could have violated § 16.2: it failed to promote employees into job codes that they had rights to. Here, it is

uncontroverted that the settlement agreement established for, the first time, the hard rights of Day 1 employees. Although Plaintiffs assert in others parts of their response that Day 1 employees had rights to certain positions that they did not receive offers for, they have failed to put forth any evidence that supports this assertion. As a result, Plaintiffs have failed to show that a factual question exists as to whether the settlement agreement violated the promotional rights of Day 1. Therefore, the contention that the settlement agreement violated § 16.2 cannot serve as the basis of Plaintiffs' § 301 claim.

### 3. Plaintiffs' Demotion and Closing of Plaintiffs' Grievances

Lastly, Plaintiffs claim both that their demotions and the closing of their grievances violated the CBA. Tellingly, Plaintiffs do not cite a provision in the CBA that prohibits Defendant from either demoting an employee or agreeing with the Union to close a grievance. After reviewing the CBA, the Court has not located such a provision. Therefore, because the CBA did not prohibit Defendant from demoting Plaintiffs or agreeing with the Union to close their grievances, the Court finds that Defendant did not violate the CBA by taking either of the aforementioned actions.[32]

In sum, Plaintiffs have failed to produce sufficient evidence to create a material fact question as to whether Defendant violated the CBA. In light of Plaintiffs' failure to prove an essential element of their hybrid claim, the Court grants Defendant's motion for summary judgment on Plaintiffs' hybrid § 301 claim.

---

[32]*See, e.g., Abdelmesih v. Waldorf-Astaria*, 1998 WL 740940, at *6 (S.D.N.Y. Oct. 21, 1998); *Greenslade v. Chicago Sun-Times*, 930 F. Supp. 323, 330 (N.D. Ill. 1996).

*State Law Claims*

Plaintiffs' also assert three state law claims: (1) breach of contract; (2) promissory estoppel; and (3) negligent misrepresentation. Defendant advances three arguments for why summary judgment should be granted in its favor on each of Plaintiffs' state law claims: (1) Section 301 Preemption; (2) Conflict Preemption; and (3) Plaintiffs' state law claims fail as a matter of law. Because the Court finds that all of Plaintiffs' state law claims fail as a matter of law, it does not address Defendant's first two arguments.[33]

**Merit of Plaintiffs' State Law Claims**

**1. Breach of Contract**

Under Kansas law, the essential elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach.[34] In the present case, Plaintiffs allege that Defendant violated express employment contracts it had with Plaintiffs, which, according to Plaintiffs, the parties entered into before Plaintiffs started work and before they were covered under the CBA, when it demoted them a year after they started working

---

[33]*See, e.g., Washington v. Union Carbide Corp.*, 870 F.2d 957, 960 (4th Cir. 1989) ("[I]t lies within the discretion of the federal district court to dismiss state claims on their merits before resolving the preemption inquiry."); *Lee v. Pfeifer*, 916 F. Supp. 501, 505 (D. Md. 1996) ("If the plaintiff does not state an actionable state claim, then the claim may be dismissed on the merits prior to engaging in the preemption analysis."); *Nipper v. Garage Door Group, Inc.*, 1992 WL 331326, at *8 (D. Kan. Oct. 19, 1992) (noting that it could dismiss the plaintiff's claim "without considering whether they are preempted by § 301"); *see also Johnson v. Cadillac Plastics Group, Inc.*, 908 F. Supp. 847, 853 n.4 (D. Colo. 1995) (deciding not to address the defendant's argument that the plaintiff's claim was preempted by the Age Discrimination in Employment Act because it had concluded that the plaintiff's state law claims fail as a matter of law).

[34]*Commercial Credit Corp. v. Harris*, 212 Kan. 310, 313, 510 P.2d 1322, 1325 (1973).

for Spirit.  In its memorandum in support of its motion, Defendant contends, among other things, that, even if such contracts existed, its actions could not have breached them because they did contain any terms or provisions guaranteeing Plaintiffs a certain job level or wage rate into the future.  In support of this contention, Defendant cites to Plaintiffs' deposition testimony that no one with Spirit promised them employment or a certain wage rate into the future and that the documents they received during the hiring process did not guarantee them employment at a particular level or a certain wage rate into the future.  In their response, Plaintiffs offer no evidence of a promise or representation made by Defendant guaranteeing them that they would be employed at a certain job or be paid a certain wage for a period into the future.  Instead, citing to *Lynn v. General Electric Co.*[35] and *Durkin v. Cigna Property & Casualty Corp.*[36], Plaintiffs merely state that "they have a breach of contract claim for their job level and wage loss even though they are at-will employees."[37]

Assuming for the moment that Defendant did in fact enter into employment contracts with Plaintiffs that were independent of the CBA, in order for Plaintiffs to succeed on this claim, they must show that their contract contained a term or provision that ensured them employment at a certain level and wage rate for a period into the future.  Plaintiffs have failed to make this showing.  Plaintiffs have not put forth any evidence that any such term or provision existed.  In fact, as pointed out by Defendant, Plaintiffs actually admit that Defendant never made any promises guaranteeing

---

[35] 2005 WL 701270 (D. Kan. Jan. 20, 2005).

[36] 942 F. Supp. 481 (D. Kan. 1996).

[37] Plaintiffs do not actually argue these two cases; rather, they merely cite to them.

them employment at a certain level or wage rate into the future. As a consequence, Plaintiffs' breach of contract claim fails as a matter of law.

The holdings in *Lynn* and *Durkin* do not mandate a different outcome. *Lynn* and *Durkin* merely stand for the unremarkable proposition that at-will employees do labor under a basic employment contract: "the employee promises to do a certain job and the employer promises payment therefor."[38] These cases clearly do not excuse Plaintiffs from their duty of producing evidence that their employment contract contained a provision that prohibited their employer from taking the action it took. Based on Plaintiffs' citation to these cases, it appears that Plaintiffs have misconstrued Defendant's argument. Defendant is not contending that Plaintiffs' breach of contract claim fails because at-will employees cannot have employment contracts; rather, it is arguing that Plaintiffs' claim must fail because Plaintiffs have not shown that any term or provision of the alleged contract was violated. Therefore, Plaintiffs' reliance on the aforementioned cases to support its assertion that their breach of contract claim does not fail as a matter of law is misplaced.

## 2. Promissory Estoppel

In addition, Plaintiffs assert a promissory estoppel claim. To establish a claim of promissory estoppel, a plaintiff must prove: (1) that the promisor reasonably expected the promisee to rely on his promise; (2) that the promisee acted reasonably in relying upon the promisor's promise; and (3) that refusal to enforce the promise would result in the perpetuation of fraud or injustice.[39] Defendant contends that Plaintiffs' promissory estoppel claim fails for two reasons: (1) it never promised

---

[38]*Lynn*, 2005 WL 701270, at *7; *Durkin*, 942 F. Supp. at 487.

[39]*Berryman v. Kmoch*, 221 Kan. 304, 307, 559 P.2d 790, 794 (1977).

Plaintiffs employment or a certain wage rate into the future; and (2) Plaintiffs have not put forth evidence showing that they have suffered reliance damages.

As stated in their response, Plaintiffs base their promissory estoppel claim on Defendant's promise to them, which, according to Plaintiffs, was made before they were covered under the CBA, that they would be employed as Level A Tooling Technicians and receive a certain wage. Defendant contends that this promise cannot serve as the basis for Plaintiffs' promissory estoppel claim because this promise did not guarantee Plaintiffs that they would be employed at that level or wage rate for a period of time into the future. Plaintiffs' response to Defendant's contention is that "[i]t does not make a difference whether Spirit unjustly failed to performed its promises after one day, one week, or one year."[40]

Contrary to Plaintiffs' assertion, the fact that Defendant did not promise Plaintiffs Level A employment and a particular wage rate for a period of time into the future is relevant. In order to succeed on a promissory estoppel claim that arises from Defendant's decision to demote them, Plaintiffs must show that Defendant clearly and unambiguously promised them either that it would never demote them or that it would employ them at a certain level and wage for a period of time into the future.[41] As stated above, Plaintiffs base their promissory estoppel claim solely on Defendant's

---

[40]Plaintiffs did not actually make this argument in the portion of their response dealing with the merits of this claim, section III.C.3; rather, they made it in the portion dealing with § 301 preemption, section III.B.2.b. However, because Plaintiffs make no effort to refute Defendant's contention in the section of their brief dealing with the merits of their promissory estoppel claim, the Court assumes that Plaintiffs intended to also make this argument there.

[41]Although no Kansas court has specifically stated that the promise in question must be clear and unambiguous, the Court is persuaded, both by logic and the precedent that has developed in jurisdictions that base its promissory estoppel action on the Restatement (Second) of Contracts § 90, *see, e.g., Filippi v. Filippi*, 818 A.2d 608, 625 (R.I. 2003); *Russell v. Bd. of County Commissioners*, 952 P.2d 492, 503 (Okla. 1997); *Provence v. Hilltop Nat'l Bank*, 780 P.2d 990, 993 (Wyo. 1989); *Nat'l Bank of Waterloo v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989); *D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch.*, 520 A.2d 217, 221 (Conn. 1987); *Keil v. Glacier Park,*

promise to employ them as level A Tooling Technicians and pay them a certain wage. At best, this promise is ambiguous as to whether Plaintiffs were to remain, for a period of time, employed at the level and wage rate at which they started. Accordingly, Plaintiffs' promissory estoppel claim fails as a matter of law.

Even if Plaintiffs could show that Defendant had made them a clear and ambiguous promise, though, Plaintiffs' claim would fail because Plaintiffs have offered no evidence of damages suffered as a result of their reliance on Defendant's promise. In Kansas, only reliance damages – i.e., damages that would put the plaintiff in as good a position as they would have been in had the promise not been made[42] – are recoverable under a promissory estoppel theory.[43] If Plaintiffs fail to prove such damages, summary judgment is warranted on their promissory estoppel claim.[44]

In the present case, Plaintiffs claim that they have suffered, as a result of their reliance on Defendant's promise, not only lost income, but also a "loss of 'A' status employment dating back to their Boeing employment." Defendant contends that Plaintiffs' alleged damages are not reliance

---

*Inc.*, 614 P.2d 502, 506 (Mont. 1980); *Current Source, Inc. v. Elyria City School Dist.*, 813 N.E.2d 730, 737 (Ohio Ct. App. 2004); *Steele v. Delverde S.R.I.*, 662 N.Y.S.2d 30, 31 (N.Y. App. Div. 1997); *Laks v. Coast Fed. Sav. & Loan Ass'n*, 131 Cal. Rptr. 836, 839 (Cal. Ct. App. 1976), that Kansas courts would adopt this requirement if they had to decide the issue.

[42]*Source Direct, Inc. v. Mantell*, 19 Kan. App. 2d 399, 408, 870 P.2d 686, 693 (1994) (citing the Restatement (Second) of Contracts § 344(b)).

[43]*See Collins v. Old Republic Title Co.*, 1997 WL 457709, at *2 (D. Kan. July 30, 1997); *see also Ritchie Paving Inc. v. City of Deerfield, Kan.*, 275 Kan. 631, 642, 67 P.3d 843, 850 (2003) (allowing the plaintiff, an unsuccessful construction project bidder, to recover only those costs "incurred as a direct result of preparing and submitting a bid"); *Chrisman v. Phillips Industries, Inc.*, 242 Kan. 772, 780, 751 P.2d 140, 145-46 (1988) (agreeing with the state trial court that summary judgment on the plaintiff's promissory estoppel was warranted because "all of [the plaintiff's] allegations of damages arise from his termination").

[44]*See, e.g., Terra Venture, Inc. v. JDN Real Estate – Overland Park, L.P.*, 340 F. Supp. 2d 1189, 1202 (D. Kan. 2004).

damages because they have nothing to do with losses based on prior employment. The Court agrees.
The only way that Plaintiffs' alleged damages could be classified as reliance damages is if Plaintiffs
had claimed that their damages arose from either leaving a higher paying job or a job where they had
A level employment, assuming that level A employment has universal meaning within the industry.
Because Plaintiffs do not make this claim, it is clear that the damages Plaintiffs are asserting are not
reliance damages, but are demotion damages.[45] As a result, summary judgment is warranted on
Plaintiffs' promissory estoppel claim.[46]

### 3. Negligent Misrepresentation

Plaintiffs' final state law claim is a claim for negligent representation. Kansas courts
recognize this claim and have adopted the standard set forth in the Restatement (Second) of Torts
§ 552[47]:

> One who, in the course of his business, profession or employment . . . supplies false
> information for the guidance of others in their business transactions, is subject to
> liability for pecuniary loss caused to them by their justifiable reliance upon the
> information, if he fails to exercise reasonable care or competence in obtaining or
> communicating the information.[48]

Kansas courts have repeatedly held that "the elements of negligent misrepresentation differ from
those of fraud only with respect to the standard by which the defendant is charged with knowledge

---

[45]The fact that Plaintiffs are claiming only demotion damages is further evidenced by the fact that in the damages section of the pretrial order Plaintiffs state that they are seeking "back pay for wages, including overtime, lost since their demotions." Plaintiffs do not provide any other basis for their damage claim in that section.

[46]*See Collins v. Old Republic Title Co.*, 1998 WL 892282, at *2 (10th Cir. Dec. 23, 1998) (citing *Chrisman*, 242 Kan. at 780, 751 P.2d at 146) (upholding the district court's decision to grant summary judgment on the plaintiff's promissory estoppel claim because termination damages are not recoverable under a theory of promissory estoppel).

[47]*Mahler v. Keenan Real Estate Inc.*, 255 Kan. 593, 604, 876 P.2d 609, 616 (1994).

[48]Restatement (Second) of Torts § 552 (1977).

of the representation's falsity."[49]   Therefore, in order to prevail on their claim, Plaintiffs must prove:

(1) that Defendant actually made a misrepresentation; (2) that Defendant knew or reasonably should

have known that the representation they m ade was false; and (3) that Plaintif fs justifiably and

detrimentally relied on the misrepresentation.[50]   Here, Defendant asserts that Plaintiffs' purported

claim fails because Plaintiffs cannot prove elements one and two.

Defendant contends that Plaintiffs' negligent misrepresentation claim is based on the non-

disclosure of the fact that Plaintiffs could possi bly be demoted sometime in t he future.   In their

response, Plaintiffs accuse Defendant of mischaracterizing the basis of their claim.   According to

Plaintiffs, their claim is not based on some misrepresentation or nondisclosures about future events,

but rather, is based on Defendant's "misrepresent[ation] that it could offer Plaintiffs employment

as Tooling Technician A's."  In its reply, Defendant argues that th e only way Plaintiffs' claim makes

any sense is if it is based on an allegation that   Defendant failed to wa rned them that their hiring

might violate the promotional rights of Day 1 employees, which might ultimately lead to them being

demoted.

Plaintiffs' decision to base their clai m on De fendant's representation that it could offer

Plaintiffs employment as level A Tooling Technicians is an interesting one.   In light of the facts of

this case, it is not clear to the Court how Plaintiffs can believe that this representation is false.   To

---

[49]*See. e.g., Kreekside Partners v. Nord Bitumi U.S., Inc.*, 963 F. Supp. 959, 966 (D. Kan. 1997) (citing *Mahler*, 255 Kan. at 604, 876 P.2d at 616).  To succeed on a fraudulent misrepresentation claim under Kansas law, the plaintiff must prove the following elements: (1) that an untrue statement of fact was made; (2) that the party making the statement knew it to be untrue; (3) that the party making the statement made it with the intent to deceive or with reckless disregard for the truth; and (4) the plaintiff justifiable relied on the statement to their detriment. *See, e.g., Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545, 551-52 (1980).

[50]*Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 964, 971 (D. Kan. 2004).

-19-

begin with, Plaintiffs were employed for over a year at the position that Defendant offered to employ them at. Furthermore, nothing in the CBA explicitly stripped Defendant of its inherent authority as an employer to offer persons on the Cat A list employment as Level A Tooling Technicians. The fact that Plaintiffs were demoted over a year after they started from Level A to Level C is not proof that Defendant could not offer Plaintiffs Level A employment. As is clear from the parties' submissions, Plaintiffs were not demoted because Defendant and the Union concluded that Defendant lacked the ability to hire Plaintiffs as Level A Technicians; rather, Plaintiffs were demoted because employees more senior than Plaintiffs were in job codes lower than Plaintiffs. As admitted by the parties, this problem could have been alleviated by leaving Plaintiffs at the position they were hired at, Level A, and moving those workers who were more senior up.

Nevertheless, even if Defendant did misrepresent that it could offer Plaintiffs Level A employment, Plaintiffs' claim fails because the Court finds, as a matter of law, that Defendant was not negligent. At the time Defendant made employment offers to Plaintiffs, it had no reason to question its ability to offer Level A employment to persons listed on the Cat A list. The CBA did not specifically restrict this practice. Moreover, no grievances challenging the practice had been received by Defendant when it made its offers. Plaintiffs have failed to cite to any evidence that shows that Defendants should have been on notice that it may be violating the rights of some of its Day 1 employees by offering Level A employment to Plaintiffs. Therefore, in light of these facts, the Court concludes that Defendant was not negligent.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Doc. 65) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 25th day of January, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE